UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
MANJINA PATEL, as the Guardian of,
KISHAN PATEL, an incapacitated person,                  Docket No. _____
and
STEPHANIE HUMMEL

                        Plaintiffs,              **COMPLAINT**

     - against -                        *Jury Trial Demanded*

CITY OF NEW YORK, POLICE OFFICER
HIEU TRAN, MAYOR ERIC ADAMS, COMM.
EDWARD CABAN and JOHN DOE
POLICE OFFICERS 1-10,

                        Defendant(s).
-----------------------------------------------------------X

Plaintiff, Manjina Patel, as the guardian of Kishan Patel, an incapacitated person, by her attorneys, Marrone Law Firm, LLC, and Plaintiff Stephanie Hummer, by her attorneys Saltz, Mongeluzzi, Bendesky, PC, and Held & Hines, LLP, allege, upon information and belief, as follows:

**<u>PRELIMINARY STATEMENT</u>**

1.     On May 17, 2024, Defendant, Hieu Tran, who was a "ticking timebomb" employed as a police officer with the New York City Police Department ("NYPD"), opened fire with his NYPD issued firearm, striking thirty-year old Voorhees Township, New Jersey resident, Kishan Patel, and causing a multi-vehicle accident. As a result of this incident, both Hummel and Patel suffered catastrophic injuries, the details of which are set forth in greater detail below.

2.     Prior to this incident, Defendant, City of New York, knew that Defendant, Officer Hieu Tran, had significant mental health challenges with longstanding alcoholism, despite his being only twenty-seven years old.  Somehow, he was accepted into the NYPD and armed with a

service pistol, but soon became a "problem officer" who needed to be taken "off the street." After serving in Harlem for less than three years, Officer Tran was transferred to the office of the Deputy Commissioner of Public Information ("DCPI"). This is a well-known repository for NYPD employees who have committed acts of misconduct but, for some reason, are not removed from the NYPD altogether. Most officers who are sent to DCPI have already accumulated many years of experience. Officer Hieu Tran's assignment to this office is highly unusual because of his notable lack of experience.

3.      Notably, despite his significant mental health challenges and longstanding alcoholism, Officer Hieu Tran was *not suspended* from the force and was *not required to surrender his 9mm service pistol*. That is the same weapon that he used to shoot Kishan Patel, which resulted in the motor vehicle accident in which Hummel was injured.

4.      The shooting and resulting multi-vehicle accident took place in southern New Jersey, not far from Philadelphia. After leaving Kishan Patel bleeding uncontrollably in the cab of his pickup truck and Stephanie Hummel catastrophically injured, Officer Tran calmly fled the scene, drove north, stopped for gas, went home to New York, reloaded his weapon and went to work the next day like nothing had happened. Officer Tran was also found to have been conducting internet searches to learn about the shooting.

5.      Local police in New Jersey were able to reassemble Officer Hieu Tran's movements from numerous video sources, including sources which show the actual incident. The three 9mm shell casings found at the scene matched Officer Hieu Tran's service weapon. Officer Hieu Tran was arrested at his workplace at the Office of Public Information, charged with attempted murder and aggravated assault, among other crimes, and has been in custody in Camden County, New Jersey, ever since.

6.     At a pre-trial detention hearing, Judge Michael Joyce of the New Jersey Superior Court denied bail after reviewing the state's evidence. Part of that evidence was a psychological evaluation that Officer Hieu Tran was on a downward spiral. The following excerpts from the transcript of that hearing show the implications of what was in the psychological report, and the fact that Officer Hieu Tran's NYPD superiors knew of these issues prior to this incident:

```
             Now what we have here, according to Dr.
Wiltzy, is a young police officer suffering from
untreated work related PTSD, depressive disorder and a
long history of substance abuse, specifically, Judge,
he's been self medicating with alcohol for years.  Dr.
Wiltz offers the opinion that these conditions were a
direct contributing factor to this unfortunate event.
Dr. Wiltzy also --
             THE COURT:  His commanding officer in New
York PD told him to get treatment for it and didn't do
it.
             MR. GIGLIOTTI:  Excuse me?
             THE COURT:  His commanding officer, New York
PD recognized he had an alcoholic abuse problem, told
him to get treatment for it, hasn't done it.
             MR. GIGLIOTTI:  And he didn't.  Understood.

             Dr. Wiltzy further indicates, Judge, that he
believes Officer Tran was on a downward spiral.

             Defense counsel noted that the treating -- or
evaluating psychologist, rather, Dr. Wiltzy, indicate
that he's on a downward spiral.  That's located on page
nine of the report.  Going down the following sentence
the doctor goes on the opine that, "It seems inevitable
that something tragic was impending in his life based
upon his physical, psychological and emotional
deterioration."
             So if I read this correctly, the doctor's
essentially opining that his was almost inevitable that
this defendant was going to do something awful.
Nothing about this report says that it was limited to a
one time thing, as I read it, Your Honor.
```

*See*, pages 22-24 of June 25, 2024, Detention Hearing Transcript, a copy of which is attached hereto as Exhibit "A" to this Complaint.

7.      The failure of the Defendant, City of New York ("City) and the New York City Police Department ("NYPD"), to adopt and/or enforce adequate policies, procedures, and practices to address a longstanding problem of alcohol and substance abuse by its police officers, including Defendant, Officer Hieu Tran, while both on-duty and off-duty, constituted negligence and deliberate indifference and was a proximate cause of Plaintiffs' injuries.

8.      The City's and NYPD's negligence and deliberate indifference to adequately respond to alcohol abuse and mental health challenges of its police officers includes longstanding notice of the problem and a failure to adopt and/or enforce policies, procedures and practices addressing the use and misuse of police issued service weapons by officers both on-duty and off-duty who are not fit for duty because of said abuse and mental health challenges while in possession of their firearms.

9.      Defendant, Police Officers John Doe 1-10, were responsible for the recruitment, training, supervision, retention and discipline of New York City Police Officers, including Defendant, Officer Hieu Tran. At all relevant times these Defendants were negligent and deliberately indifferent to the rights of Kishan Patel and Stephanie Hummel, which negligence caused the Plaintiffs to suffer catastrophic injuries as further described herein.

10.     As a remedy for these violations alleged therein, Plaintiffs seek compensatory damages, punitive damages and an award of the costs and expenses of this action; and any such other and further relief as this Court may deem appropriate.

## JURISDICTION AND VENUE

11.     The Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 and §1343 and has diversity jurisdiction pursuant to 28 U.S.C. §1332 since there is complete diversity with no Plaintiff or Defendant being from the same state and with the amount in controversy exceeding $75,000.

12.     Venue in the Southern District of New York is proper under 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to this action occurred within the district.

## TRIAL BY JURY

13.     Plaintiff demands a trial by jury on each and every one of her claims herein.

## PARTIES

14.     At all relevant times, Kishan Patel was a resident of Voorhees, New Jersey.

15.     At all relevant times, Plaintiff Manjina Patel was a resident of Voorhees, New Jersey. Plaintiff Manjina Patel is the mother of Kishan Patel and has been designated by the Surrogate of New Jersey, as the legal and natural guardian of Kishan Patel, an incapacitated person.

16.     At all relevant times, Plaintiff, Stephanie Hummel, was a resident of Sicklerville, New Jersey.

17.     Defendant, City of New York (the "City"), is a duly constituted municipal corporation of the State of New York. It is authorized under the laws of the State of New York to maintain a police department, the NYPD, which acts as its agent in the area of law enforcement and for which it is ultimately responsible. The City assumed the risks incidental to the maintenance of a police force and the employment of police officers, including Defendant, Hieu Tran.

5

18.     Defendant, Hieu Tran ("Officer Hieu Tran"), is an adult individual resident of Westchester County, New York, and at all times relevant herein, was a police officer employed by the City and the NYPD. At all times relevant to the facts of this Complaint, said Defendant was acting under color of law and within the scope of his employment. Defendant, Hieu Tran, is sued in his individual and official capacity.

19.     Defendant, Mayor Eric Adams ("Mayor Adams"), was at all times relevant herein a resident of New York, was the Mayor of New York City and had the final say as policymaker for the hiring of the Police Commissioner and the policies, customs and practices that were in effect at the time of the events giving rise to this lawsuit. At all relevant times to the facts of this Complaint, Mayor Adams was acting under color of law and within the scope of his employment as the Mayor of New York City. Defendant, Mayor Eric Adams is sued in his individual and official capacity.

20.     Defendant, Commissioner Edward Caban ("Comm. Caban"), was at all times relevant herein a resident of New York, was the New York City Police Commissioner and the police department's final policymaker. At all times relevant to the facts of the Complaint, Comm. Caban was acting under color of law and within the scope of his employment by the City. Defendant, Commissioner Edward Caban, is sued in his individual and official capacity.

21.     Defendant, Police Officer John Does 1-10, whose names are not presently known to Plaintiffs, were at all times relevant herein the Police Officer John Does 1-10 were responsible for conducting the training and supervision of Officer Hieu Tran during his career as an NYPD officer. At all times relevant to the facts of the Complaint, said Defendants were acting under color of law and within the scope of their employment by the City. Defendant, Police Officer John Does 1-10, are sued in their individual and official capacities.

22. The conduct and injuries complained of herein were inflicted on Kishan Patel and Stephanie Hummel, by the Defendants without any negligent or culpable conduct by the Plaintiffs.

## OPERATIVE FACTS

23. On May 17, 2024, at approximately 11:00 PM, Plaintiff, Stephanie Hummel, was travelling southbound on Route 73 at and/or near its intersection with Cooper Road in Voorhees Township, New Jersey.

24. At the aforesaid time and place, Kishan Patel was travelling northbound on Route 73 at and/or near its intersection with Cooper Road in Voorhees Township, New Jersey. Mr. Patel was stopped at a red light at the aforesaid intersection.

25. At the aforesaid time and place, Defendant, Officer Hieu Tran, was travelling northbound on Route 73 at and/or near its intersection with Cooper Road in Voorhees Township, New Jersey. Defendant, Officer Hieu Tran was stopped at red light at the aforesaid intersection, next to Mr. Patel.

26. Just prior to the incident, Mr. Patel's vehicle was stopped at the intersection next to Officer Tran's vehicle. While the two vehicles were next to each other, Defendant Officer Tran used his NYPD-issued service weopen to shoot Kishan Patel. After the shooting, Mr. Patel's vehicle sped uncontrollably through the intersection before the light turned green, driving into oncoming traffic, and violently striking other vehicles, including Plaintiff, Stephanie Hummel's vehicle. In the meantime, Defendant, Officer Hieu Tran's vehicle also drove through the intersection before the light turned green and and began speeding up the road.

27. At the time of the incident described in the previous paragraph, Defendant Hieu Tran identified himself to Mr. Patel as an NYPD Officer by his words and other conduct, including

but not limited to the brandishing of his NYPD service weapon and/or NYPD credentials, and did otherwise establish his apparent authority as an NYPD police officer and employee. The words and conduct of Defendant Tran would have caused a reasonable person to believe that Tran was acting under color of law and within the course and scope of his authority as an employee and agent of the NYPD.

28.    Shortly after 11:00 PM Voorhees Township police officers responded to a reported motor vehicle collision. When they arrived at the scene of the incident, the responding police officers  found the wreckage of multiple vehicles, with Kishan Patel still inside his respective vehicle, with a gunshot wound and bullet strikes on the side of his vehicle. The responding police officers also found Stephanie Hummel's vehicle, with Ms. Hummel severely and catastrophically injured within her vehicle.

29.    Mr. Patel was in the driver's seat, unconscious and unresponsive. Emergency medical personnel noted uncontrolled bleeding from a gunshot wound. They initiated chest compressions in an effort to save Mr. Patel's life. He was loaded into an ambulance, intubated, and taken to Cooper Trauma Center.

30.    At the hospital, Mr. Patel was diagnosed with multiple injuries stemming from both the gunshot wound and the motor vehicle crash that followed right after. Most significantly, Mr. Patel suffered an anoxic brain injury and a spinal cord injury. He has required round-the-clock medical care ever since

31.    Ms. Hummel was extricated from her vehicle and was emergently transported to Cooper University Trauma Center.

32.    At the hospital, Ms. Hummel was diagnosed with an open comminuted fracture of the right patella, fractured sternum, bilateral rib fractures, a collapsed lung, and was required to

undergo operative intervention consisting of surgery to her right leg, among other serious and disabling injuries.

33.    Although Defendant, Officer Hieu Tran, fled the scene, multiple law enforcement agencies, including the Camden County Prosecutor's Office, the Voorhees Township Police Department, the New York City Police Department Internal Affairs Bureau and New York County District Attorney's Office Police Accountability Unit, launched investigations which have pieced together the events which occurred immediately before and after the shooting.

34.    Defendant, Officer Hieu Tran had attended a wedding earlier that evening in Sicklerville, New Jersey, which is south of Voorhees, where the shooting took place.

35.    At the time of the shooting, Defendant, Officer Hieu Tran, was employed by the NYPD and living in Yonkers, New York. To attend the wedding, he drove himself from his home to southern New Jersey.

36.    The Administrative Guide ("AG") for the NYPD requires that officers be fit for duty at all times and that they not consume alcoholic beverages or take any other action that would prohibit them from operating their service weapon in a safe and reasonable manner. That same guide requires officers to be armed at all times that they are traveling within New York City, including when they are travelling to and from the city. See, AG 304-03, 304-04, 305-07, and 318.

37.    For a significant period of time prior to May 17, 2024, and on the date of the shooting, Defendant, Officer Hieu Tran, was known to have suffered from alcoholism and other mental health challenges that should have disqualified him from being an armed and active member of the NYPD. At the aforementioned detention hearing in Camden County, New Jersey, it was disclosed that Defendant, Officer Hieu Tran had been "advised" to seek help for his

alcoholism, but that he had not done so. Despite this failure, he was permitted to be armed and employed by the NYPD.

38.    There was no prior connection between Defendant, Officer Hieu Tran, and Kishan Patel. By all accounts, this appears to have been a completely random act of violence.

39.    Following the shooting, Defendant, Officer Hieu Tran, sped away from the scene of the multiple vehicle collision, leaving Stephanie Hummel and Kishan Patel to die.  Officer Hieu Tran then went to a nearby Wawa gas station where he calmly filled up his vehicle with gasoline and continued north to New York.

40.    Based on the myriad of surveillance videos reviewed by police, it is clear that no one was in the car with Defendant, Officer Hieu Tran, at any time either before or after the incident.

41.    Police recovered three 9mm spent shell casings from the scene of the shooting. Police later obtained a warrant to examine Defendant, Officer Hieu Tran's service pistol. A ballistics comparison confirmed that the bullets fired at Kishan Patel were fired by the NYPD weapon which had been issued by Defendant, NYPD for use by Defendant, Officer Hieu Tran.

42.    Police also examined Defendant, Officer Hieu Tran's phone as part of their investigation which revealed that the phone had been used to conduct internet searches for information regarding the shooting.

43.    When Defendant, Officer Hieu Tran's weapon was examined by New Jersey police, it was found to have been reloaded.

44.    Defendant, Officer Hieu Tran, continued to report for his normal job duties as an NYPD officer between the time of the shooting and the date of his arrest more than two weeks later.

45.     At the detention hearing held in Camden County on June 25, 2024, evidence included a psychological report that was discussed on the record. This report confirmed that Defendant, Officer Hieu Tran, had long-term alcoholism and job-related PTSD. Those are conditions which should have resulted in his never having been hired as an NYPD officer and never being issued a deadly weapon. He had been informally advised by superiors who knew of these problems to get help, but that never happened as a result of Defendants' failures. Despite knowing that Tran was an alcoholic and had work-related PTSD, his superiors at the NYPD never formally directed him to obtain substance abuse counseling and/or mental health treatment, and never placed him on administrative leave due to same

46.

47.     The detention hearing also included admissions by Defendant, Officer Hieu Tran's criminal attorney that Tran had engaged in excessive drinking on the night of the incident.

48.     The City of New York and the NYPD are responsible for this tragic incident. Although Officer Tran pulled the trigger, longstanding policies, procedures and practices of the City and the NYPD permitted Officer Tran to be armed on the night of the accident with an NYPD service weapon, despite his long history of alcoholism and mental instability, which proximately caused the injuries to Kishan Patel and Stephanie Hummel.

49.     For at least two decades there has been an accepted alcohol culture in the NYPD and a failure, constituting deliberate indifference, to adopt and/or enforce adequate policies, procedures and practices to address a longstanding problem of alcohol and substance abuse by police officers, both on-duty and off-duty, as well as officers with mental health issues that often, as here, accompany such abuses.

50.    The City's and NYPD's negligence and deliberate indifference to adequately respond to the alcohol and substance abuse and mental health issues of its police officers includes a failure to adopt and/or enforce policies addressing the use and misuse of police issued service weapons by police officers, both on-duty and off-duty, who are not fit for duty because of said abuse while in possession of their firearms.

51.    The City and NYPD knew, or should have known, that there were serious deficiencies in the operation of the NYPD, including without limitation the hiring, training, supervision, and discipline provided to Defendant Officer Tran by Defendants Police Officer John Does 1-10.

52.    The City and NYPD knew, or should have known, that there were failures in their hiring, training, supervision, and discipline of Office Tran and that they were negligent and deliberately indifferent in the instance in allowing a ticking timebomb to join and remain on their police force, to be a known alcoholic, suffering from post-traumatic stress disorder and to be allowed to remain on the force and armed with his service issued weapon.

53.    This incident of an armed and dangerous New York City police officer shooting at innocent civilians was readily foreseeable. Moreover, this incident highlights an open secret within the police force - the NYPD has a longstanding alcohol and substance abuse and mental health problem, and the City has been negligent and deliberately indifferent to effectively addressing it.

54.    The City's longstanding negligence and deliberate indifference is demonstrated by the failure to take necessary remedial steps to deal with the problem despite Commissioner Bratton vowing in 1995, during his first tenure as New York City Police Commissioner, to address it with a "new strategy on police corruption".

55.    Also in 1995, former Mayor Rudolph Guiliani created the Commission to Combat Police Corruption ("Commission") which produced a report in 1998 reviewing cases of on-duty and off-duty misconduct fueled by the misuse of alcohol. The Commission then made recommendations to address the problem, but the City and NYPD never took the necessary steps to effectively implement them.

56.    The fact that Officer Tran was known to have a long-standing problem with alcohol and other mental health issues, and that the only action taken by his superiors was to put him in the office of DCPI without disarming him or ensuring he received the treatment required to be fit for armed duty, shows the nature and extent of NYPD's negligence and deliberate indifference to public safety in its failure to deal with this problem.

57.    NYPD did nothing to prevent Officer Tran from taking his NYPD issued weapon and using it to commit acts of violence and mayhem.

58.    Officer Tran's misconduct was not an isolated incident as evidenced by the number of other incidents involving NYPD officers who should not have been on the force.

59.    There are numerous other examples of alcohol abuse by NYPD officers, and the harms that result. Examples include, but are not limited to:

a.    On October 6, 2013, drunken off-duty NYPD Police Officer Joseph McClean was arrested and charged after hitting a pedestrian in Staten Island. The pedestrian was killed and the officer was charged with manslaughter.

b.    In August 2013, veteran NYPD Police Officer Ronald Holmes was charged with drunken driving related offenses after driving the wrong way on the Southern State Parkway, in Long Island, New York.

c. In March 2013, Joseph King, a 28-year-old NYPD Police Officer, was charged with DWI, Leaving the Scene of an Accident, and Refusal to Take Breath Test. Police say King had gotten into an accident on the BQE in Queens around 4:30 a.m. on Sunday. After allegedly fleeing the scene and then being pulled over, he refused to take a breath test.

d. On March 17, 2013, at 6 a.m., NYPD Police Officer Dennis Munge, 32, was charged with DWI in Jackson Heights, Queens.

e. On March 18, 2013, at 1:30 a.m., NYPD Detective Washington Mosquera, 37, was charged with DWI in Brooklyn.

f. On November 16, 2012, NYPD Police Officer Miguel Ocasio, 30, was pulled over and was arrested after he refused to take a breath test, authorities said. Police charged him with resisting arrest, driving while intoxicated and refusal to take a breath test.

g. Also on November 16, 2012, NYPD Police Officer Ismile Althaibani, 29, was pulled over at about 3 a.m. and ultimately charged with driving under the influence.

h. In July 2012, NYPD Police Officer Elvis Garcia, 27, who had been on the job for just a year, was driving his personal vehicle about 5:45 a.m. when he was involved in a two-car crash. He was subsequently charged with driving while intoxicated.

i. In July 2012, NYPD Police Officer Salisha Alirasul, 34, was arrested for DWI.

j. In July 2012, NYPD Police Officer Brayan Terrazas, 26, was arrested for DWI.

k.  On February 27, 2012, NYPD Police Officer Christopher Morris, 31, was driving a marked squad car when he lost control and smacked into a light pole in East New York about 4 a.m. He was charged with driving while intoxicated.

l.  In December 2011, NYPD Police Officer Rafael Casiano, 44, was driving on a Bronx expressway at about 4:30 a.m. Friday when his car smashed into a center divider. The passenger was another off-duty NYPD Police Officer, Keith Paul, who suffered a head wound and had to be hospitalized. They were coming home from their Manhattan precinct Christmas Party.

m.  In December 2011, NYPD Police Officer Kleaburgh Carvajal was charged with DWI.

n.  In March 2011, NYPD Police Officer Sergio Gonzalez drove under the influence of alcohol or drugs and crashed into the rear of an NYPD patrol car before finally being handcuffed.

o.  In October 2009, NYPD Detective Kevin Spellman was sentenced to three to nine years in prison for the drunk-driving death of a Bronx grandmother.

p.  In 2009, off-duty NYPD Police Officer Andrew Kelly struck a girl with his car in Brooklyn. Kelly pleaded guilty to driving drunk, served 90 days in jail and went to rehabilitation.

q.  In 2001, an off-duty NYPD Police Officer who spent up to 12 hours drinking before going to his Brooklyn precinct struck and killed a 24-year-old pregnant woman, her 4-year-old son, and her 16-year-old sister. Medical staff delivered the woman's baby boy, who died 13 hours later, and NYPD Police Officer Joseph Gray was eventually convicted of four counts of second-degree manslaughter. He

was sentenced to 5 to 15 years in prison. The event "mushroomed into scandal"
when it was discovered that other officers were drinking with Gray in a topless
bar at a nearby precinct parking lot before the incident.

r.  On May 18-20, 1995, NYPD Police Officers, staying at the Hyatt Regency Hotel
in Washington, D.C., disrobed, poured beer down the lobby escalator and then
slid down it. Some sprayed fire extinguishers at each other and at other guests, set
off false alarms and vandalized the hotel. Other reports involve armed officers in
uniform drinking heavily and firearms being discharged from a hotel. Officers
also allegedly tried to gain entry to women's rooms by posing as Federal agents
and harassed female guests.

60.    Defendant City, as a matter of policy and practice, has negligently and with
deliberate indifference, failed to adequately discipline, train, monitor, treat or otherwise direct
police officers, including the Defendant police officers, with regard to the retention of police
officers like Hieu Tran who were known to be dangerous.

61.    Defendant City has also negligently and with deliberate indifference failed to
adequately create and/or enforce policies and procedures that address the NYPD employees'
mental health issues and substance abuse, including alcohol consumption, and its causal
relationship to the misuse of firearms by on-duty and off-duty police officers. This negligence and
deliberate indifference was a proximate cause of Defendant Officer Tran's actions on May 17,
2024.

62.    Defendant New York City, as a matter of policy and practice, has negligently and
with deliberate indifference, failed to properly investigate the background, beliefs and attitudes of
prospective police officers in order to ensure it hires only police officers that respect and honor the

constitutional rights of individuals, thereby causing the NYPD, including its Defendants in this case, to engage in the unlawful conduct described above.

63.     Defendant New York City, as a matter of policy and practice, has negligently and with deliberate indifference, failed to properly screen police applicants for a history of, or propensity for, substance abuse, including alcohol, and mental health issues.


## DAMAGES – KISHAN PATEL

64.     The unlawful, intentional, willful, deliberately indifferent, negligent, grossly negligent and reckless acts and omissions of the Defendants herein caused Mr. Patel to suffer catastrophic and permanent injuries that will affect him for the remainder of his life. These injuries have already necessitated the expenditure of hundreds of thousands of dollars in just the short time since these horrific events have occurred. That number will undoubtedly balloon into the tens of millions as Mr. Patel will forever be dependent on machines and skilled care providers for every aspect of his survival.

65.     A bullet fired by Officer Tran entered Mr. Patel's skull just behind his right ear. That bullet caused the following:

  a. Open fracture of right temporal bone;

  b. Pressure ulcer of the head;

  c. Acute blood loss;

  d. Seizure;

  e. Respiratory failure;

  f. Anoxic brain injury;

  g. Fracture of C1 vertebra;

h.   Fracture of occipital bone

66.    As a direct result of the above incident, Mr. Patel was caused to suffer excruciating and conscious pain and suffering, including mental and psychological torment, which endure to this day and will continue for the rest of his life. He has also been caused to suffer economic damages in the form of medical expenses that will continue for the rest of his life. Mr. Patel was the manager and co-owner of his parents' successful business operation. As a direct and proximate result of this incident, Mr. Patel will now be deprived of the economic opportunities and benefits that accompany owning a successful business.

67.    Notices of Claim pursuant to New York General Municipal Law § 50-e was timely served upon Defendant City on July 30, 2024. More than thirty days have elapsed without the matter being resolved by the City. Defendant City has failed or refused to make timely adjustment thereof. The Notices of Claim provided detailed information regarding the actions of the City and police personnel involved in the incident underlying the instant action and was sufficient to put the police personnel and the City on notice of the conduct in which they are alleged to have engaged.


## DAMAGES – STEPHANIE HUMMEL

68.    The unlawful, intentional, willful, deliberately indifferent, negligent, grossly negligent and reckless acts and omissions of the Defendants herein caused Ms. Hummel to suffer catastrophic and permanent injuries that will affect her for the remainder of her life. These injuries have already necessitated the expenditure of thousands of dollars in just the short time since these horrific events have occurred. That number will undoubtedly balloon into the hundreds of

thousands as Ms. Hummel will be forever impacted as a result of these catastrophic and permanent injuries.

69.    By reason of the unlawful, intentional, willful, deliberately indifferent, negligent, grossly negligent and reckless acts and omissions of the Defendants, Mr. Patel's vehicle drove into on-coming traffic, and violently struck Ms. Hummel's vehicle, causing Ms. Hummel to sustain serious, disabling and permanent personal injuries: she sustained an open comminuted fracture of the right patella, she sustained a fracture of her sternum; she sustained bilateral fractures of her ribs; she sustained a collapsed lung; she has been required to undergo operative intervention consisting of surgery to her right leg including a debridement of open fracture of the right knee with excision of bone and removal of foreign bodies on May 18, 2024; she suffered from severe injury and pain to her chest resulting in permanent cardiac disfunction; she has suffered from severe injury and pain to her legs; she has been required to undergo extensive physical therapy; she has sustained further injuries to the bones, muscles, nerves, tissues and ligaments of her body, the full extent of which is yet to be determined; she sustained other injuries to her nerves and nervous systems; she sustained other orthopedic, neurologic and psychological injuries, the full extent of which is yet to be determined; she has in the past and may in the future be required to submit to x-rays, MRIs and other diagnostic studies; she has in the past and may in the future continue to suffer agonizing aches, pains and mental anguish; he has in the past and may in the future continue to endure pain and suffering; she has in the past and may in the future continue to be disabled from performing her usual duties, occupations, avocations, all to her great detriment and loss; she has in the past and may in the future suffer a loss of wages; she has suffered a significant loss of life's pleasures; she has suffered from severe embarrassment and humiliation.

70.     By reason of the unlawful, intentional, willful, deliberately indifferent, negligent, grossly negligent and reckless acts and omissions of the Defendants, as aforesaid, Plaintiff, Stephanie Hummel, has incurred various expenses, including medical expenses and bills, Plaintiff may be obligated to continue to expend monies and incur further obligations for her medical care and treatment, for an indefinite period of time in the future.

71.     Plaintiff, Stephanie Hummel, has sustained and makes claim for pain and suffering, loss of physical function, permanent scarring, permanent physical, mental, and psychological injuries, humiliation and embarrassment, loss of life's pleasures, loss of earnings and future earning capacity, and any and all other damages to which she is entitled or may be entitled under the laws of the State of New York.

72.     On March 11, 2025, The Supreme Court of the State of New York, New York Couty, issued an Order holding that Plaintiff, Stephanie Hummel's Notice of Claim pursuant to New York General Municipal Law § 50-e shall be deemed timely served *nunc pro tunc* upon Defendant City. The Notice of Claim provided detailed information regarding the actions of the City and police personnel involved in the incident underlying the instant action and was sufficient to put the police personnel and the City on notice of the conduct in which they are alleged to have engaged. More than thirty days have elapsed without the matter being resolved by the City. Defendant City has failed or refused to make timely adjustment thereof.

## FEDERAL CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
*42 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendments*

73.     Plaintiffs hereby incorporate by reference all previous paragraphs as though fully set forth herein.

74.     Defendant, Officer Hieu Tran, under color of law and with the indicia of authority of a New York City Police Officer, violated Kishan Patel's and Stephanie Hummel's due process rights to be free from the unreasonable and unnecessary use of excessive force, unreasonable seizures, and to bodily integrity.

75.     Defendant, Police Officers John Doe 1-10, under color of law and with the indicia of authority of New York City Police Officers, personally and directly violated Kishan Patel's and Stephanie Hummel's due process rights to be free from unreasonable seizure, excessive force and to bodily integrity by encouraging, and failing to intervene to prevent, the actions of Defendant, Officer Hieu Tran, knowing that he was dangerously unsafe and in possession of his service weapon while unfit for duty.

76.     Each of the Defendants' actions directly and proximately caused Kishan Patel's and Stephanie Hummel's injuries.

77.     By these acts, omissions and conduct, these individual Defendants have deprived Plaintiffs of rights secured by the Fourth and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. Section 1983, for which the Defendants are individually liable.

**SECOND CLAIM FOR RELIEF**
*Monell Claims for Municipal Liability Against Defendant New York City*

78.     Plaintiffs hereby incorporate by reference all previous paragraphs as though fully set forth herein.

79.     Defendants, City, Mayor Adams and Comm. Caban, as the police department's final policymaker, are responsible for the NYPD's policy, practice and custom of being deliberately indifferent to the continued hiring and retention of Defendant, Officer Hieu Tran, and

other armed employees of the NYPD, who are known, because of alcohol dependency and/or mental illness, to be a lethal threat to themselves and those around them.

80.    Defendants, City, and NYPD policymakers, Defendants, Mayor Adams and Comm. Caban, knew of the longstanding problem of hiring and retaining officers who had alcohol dependency and/or mental illness which rendered them unfit for duty, and despite this knowledge, left Defendant, Officer Hieu Tran, in possession of his service weapon.

81.    Defendants, City, Mayor Adams and Comm. Caban, knew or should have known that the failure to adequately address alcohol and substance abuse within the department through training and formal discipline had caused problems in the past, and would continue to cause problems in the future, including violations of constitutional rights because of the failure to adopt and implement adequate policies, procedures and practices and to adequately screen, train, supervise and/or discipline police officers engaging in, or likely to engage in, such behavior.

82.    This deliberate indifference on the part of Defendants, City, Mayor Adams and Comm. Caban, were the moving force behind the deprivation of Plaintiff' constitutional rights secured by the Fourth and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. §1983.

## STATE LAW CLAIMS
## CONDITIONS PRECEDENT

83.    Notices of Claim, setting forth the time, place, and manner of the incident and the injuries sustained by Plaintiffs, were duly filed with the City of New as set forth above.

84.    More than thirty (30) days have elapsed since Plaintiffs served their Notices of Claim and the City of New York has neglected and refused to make an adjustment thereof.

85.     This action commenced within one year and ninety (90) days of the incident.

86.     Plaintiff Manjina Patel appeared for a statutory hearing pursuant to GML § 50-h on August 28, 2024. Plaintiff Stephanie Hummel was and remains ready, willing, and able to appear for a 50-h hearing upon proper and timely notice; however, it has not yet taken place yet.

87.     The limitations on liability set forth in CPLR § 1601 do not apply to this action by reason of one or more of the exceptions set forth in CPLR § 1602.


### FIRST CLAIM FOR RELIEF UNDER STATE LAW:
*ASSAULT AND BATTERY against Defendants Tran and City of New York*

88.     Plaintiffs hereby incorporate by reference all previous paragraphs as though fully set forth herein.

89.     As set forth above, the Defendant Tran did initiate nonconsensual contact with Kishan Patel and Stephanie Hummel (via the doctrine of transferred intent. *See, Rubino v. Ramos*, 226 A.D.2d 912, 913, 641 N.Y.S.2d 409 [3d Dept. 1996]; *see Jones v. State of New York*, 96 A.D.3d 105, 110–111, 468 N.Y.S.2d 223 [4th Dept. 1983], *lv denied* 62 N.Y.2d 605, 479 N.Y.S.2d 1026, 467 N.E.2d 895 [1984]; *see also Borrerro*, 165 A.D.3d at 1218, 87 N.Y.S.3d 618; *Parler v. North Sea Ins. Co.*, 129 A.D.3d 926, 928, 11 N.Y.S.3d 659 [2d Dept. 2015]); did forcibly touch Plaintiffs; did intimidate and cause Plaintiffs' safety and security to feel threatened; and did assault and batter Plaintiffs.

90.     Defendant Officer Tran made, and/or directly caused to be made, offensive bodily contact with Plaintiffs, constituting harmful and offensive contact to Plaintiffs' persons. Said contact was done intentionally by Defendant Officer Tran and without either Plaintiff's consent or legal justification.

91.     As alleged herein, Defendant Officer Tran's acts against Plaintiffs created a reasonable apprehension in Plaintiffs of immediate harmful or offensive contact to Plaintiffs' persons. Said acts were done intentionally by Defendant Officer Tran without either Plaintiff's consent or legal justification.

92.     Inasmuch as Defendant Officer Tran was acting for, upon, and/or in furtherance of the business of his employer and/or within the scope of his employment, defendant City of New York is liable under the doctrine of *respondeat superior* for Officer Tran's tortious actions.

93.     As a result of the foregoing, Plaintiffs were caused to sustain physical, psychological and emotional injuries, pain and suffering, shame, embarrassment, humiliation, damage to reputation, have been caused to incur pecuniary losses, and were otherwise damaged.

## SECOND CLAIM FOR RELIEF UNDER STATE LAW
### *NEGLIGENCE against All Defendants*

94.     Plaintiffs hereby incorporate by reference all previous paragraphs as though fully set forth herein.

95.     Defendants Officer Tran, Police Officers John Doe 1-10, Defendant Mayor Adams, and Defendant Commission Caban, while acting as employees for New York City, owed a duty to Plaintiffs to perform their duties without violating Plaintiffs constitutional rights.

96.     Defendant Officer Tran abused alcohol both on-duty and off-duty, violated his 24 hours a day requirement to be fit for duty and possessed and used firearms while unfit for duty. These violations were proximate causes of the unlawful and unnecessary use of force against Plaintiff Kishan Patel and constitutes negligence for which the Defendants are liable.

97.     Defendants, City, Adams, and Caban knew through their agents and through the NYPD's derogation of duty, that Defendants, Officer Hieu Tran and Police Officer John Does 1-

10, had a propensity for committing such illegal acts in the line of duty, and acquiesced in the Defendants' wrongful conduct.

98.     Defendant, City, is thus liable for the intentional and negligent torts of Defendants, Officer Hieu Tran, Mayor Adams, Comm. Caban, and Police Officers John Doe 1-10.

99.     At all relevant times, Defendant City, acting through its duly authorized policymakers, knew or should have known that its officers with substance dependency and/or mental health challenges would be confronted with the decision to use deadly force, knew or should have known that the decision to use deadly force would be impacted by the officers' substance and/or mental health challenges, knew or should have known that the failure to adequately address alcohol and substance abuse within the department had caused problems in the past, and would continue to cause problems in the future including violations of constitutional rights because of the failure to adopt and/or implement adequate policies, procedures and practices and to adequately screen, train, supervise and/or discipline police officers engaging in or likely to engage in, such behavior.


### THIRD CLAIM FOR RELIEF UNDER STATE LAW
*NEGLIGENT HIRING, RETENTION AND SUPERVISION*
*against Defendant City of New York*

100.     Plaintiffs hereby incorporate by reference all previous paragraphs as though fully set forth herein.

101.     At all relevant times, Defendant City, acting through its duly authorized policymakers, knew or should have known that its officers with substance dependency and/or mental health challenges and/or mental illness, including Defendant Hieu Tran, would be

confronted with the decision to use deadly force, knew or should have known that the decision to use deadly force would be impacted by the officers' substance and/or mental health challenges, knew or should have known that the failure to adequately address alcohol and substance abuse and/or mental health challenges within the department had caused problems in the past, and would continue to cause problems in the future including violations of constitutional rights because of the failure to adopt and/or implement adequate policies, procedures and practices and the failure to adequately hire, screen, train, supervise and/or discipline police officers engaging in or likely to engage in, such behavior.

102.    Defendant, City, turning a blind eye to the harmful propensities of its Officers, including Officer Hieu Tran, which propensities were the result of substance abuse and/or mental illness by taking no reasonable steps to address the alcohol and substance abuse and mental illness within the department, despite knowing of Officer Hieu Tran's propensity for alcohol and substance abuse and his documented mental illness which it knew or should have known would cause problems in the future including violations of constitutional rights.

103.    Defendants, City, in hiring, retaining and failing to properly supervise, Defendant, Officer Hieu Tran, was careless and negligent in hiring and retaining an unqualified and incompetent Officer, failing to do a proper background check on Defendant, Officer Hieu Tran, hiring and retaining an Officer whom it knew or should have known suffered from alcohol and substance abuse issues and mental illness, hiring and retaining an Officer whom it knew or should have known would use his firearm in an unsafe manner, failing to have proper policies and procedures in place to ensure its Officers, including Officer Hieu Tran, did not have alcohol and substance abuse issues and mental health issues which it knew would impact their Officer's decision to use deadly force and by failing to have proper policies and procedures in place to ensure

its Officers, including Officer Hieu Tran, would use their department issued firearms in a safe manner.

104.    Each defendant, inclusive of their agents, servants and employees, owed Plaintiffs a duty of care, including the duty to prevent them from being assaulted, battered, and harmed.

105.    Each defendant, inclusive of their agents, servants and employees, negligently breached their duty of care to Plaintiffs.

106.    Defendants were negligent in the instance in that each ignored, misunderstood, misinterpreted, and/or failed to comprehend that Defendant Tran was a danger to himself and the public. No reasonable police officer und the same or similar circumstances would have believed that Defendant Tran was qualified and fit for service.

107.    The injuries to Plaintiffs were the proximate result of Defendant City's negligence in hiring, training, and supervising defendants Tran and John Does 1-10; in their failure to employ qualified persons for positions of authority; in their failure to properly and/or conscientiously train and supervise the conduct of such persons during their employment; and in their failure to promulgate appropriate policies and procedures either formally or by custom to avoid such instances.

108.    Defendant City's failure to adequately train their agents, servants and employees in the reasonable exercise of their job duties and the laws of the United States of America, the State of New York, and the rules and regulations of the City of New York, is evidence of their reckless lack of cautious regard for the rights of the public in general and Plaintiffs in particular, and exhibited a lack of that degree of due care which reasonable and prudent individuals would show under the same or similar circumstances.

109.    Defendant City knew or should have known in the exercise of reasonable care the

propensities of the defendant officers to engage in the wrongful conduct alleged herein.

110.    The mistreatment, abuses, and violations of Plaintiffs' rights, as set forth above, were the reasonably foreseeable consequence of each defendant's negligent conduct.

111.    The aforesaid acts and omissions of said defendants, their agents, servants and employees, resulted in the plaintiffs being injured.

112.    Inasmuch as defendant Tran and John Does 1-10 were acting for, upon, and/or in furtherance of the business of their employer and/or within the scope of their employment, defendant City is liable under the doctrine of *respondeat superior* for the tortious actions of same.

113.    As a result of the conduct complained of herein, each Plaintiff suffered the damages alleged.

114.    As a result of the foregoing, each Plaintiff was caused to sustain physical, psychological and emotional injuries, pain and suffering, deprivation and violation of due process and civil rights, caused to incur pecuniary losses, and were otherwise damaged.


## FOURTH CLAIM FOR RELIEF UNDER STATE LAW
*NEGLIGENCE PER SE for violation of NY CLS Exec. 75 against All Defendants*

115.    Plaintiffs hereby incorporate by reference all previous paragraphs as though fully set forth herein.

116.    At all relevant times Defendants John Doe Police Officers 1-10, Mayor Adams and Commissioner Caban had actual and/or constructive notice of information concerning corruption, fraud, use of excessive force, criminal activity, conflicts of interest or abuse by Defendant Officer Tran.

117.    In particular, Defendants had actual and/or constructive notice of the fact that Defendant Officer Tran suffered from mental illness and substance dependency, all of which made him a danger to himself and those around him.

118.    At all relevant times, NY CLS Exec. 75 required all police personnel who were aware of the misconduct and abuse committed by Officer Tran to report that activity or be sanctioned: "The knowing failure of any officer or employee to so report shall be cause for removal from office or employment or other appropriate penalty." *See* NY CLS Exec 75.

119.    Despite the actual and/or constructive notice of Defendant Officer Tran's misconduct and abuses, Defendants John Doe Police Officers 1-10, Mayor Adams and Commissioner Caban, failed to comply with NY CLS Exec. 75 because they did not report the known known misconduct and abuses of Defendant Officer Tran.

120.    Upon information and belief there were additional incidents of misconduct committed by Defendant Officer Tran, the details of which have not yet been disclosed by Defendants. Regardless, based on the known misconduct and abuse which has already been admitted to by Defendant Tran, and the details about who knew of those instances of misconduct and abuse, there was a violation of NY CLS Exec. 75.

121.    At all relevant times, Defendant City of New York, acting through its administrators and agents, failed to enforce the above-described breaches of NY CLS Exec. 75.

122.    The conduct of Defendants, in failing to abide by and enforce the NY CLS Exec. 75, constitutes negligence *per se*:

> It is well established that an unexcused violation of a statutory standard of care, if unexplained, constitutes negligence per se (*see, Martin v. Herzog,* 228 N.Y. 164, 126 N.E. 814; *Cordero v. City of New York,* 112 A.D.2d 914, 492 N.Y.S.2d 430; *Tomaselli v. Goldstein,* 104 A.D.2d 872, 480 N.Y.S.2d 382; *Aranzullo v. Seidell,* 96 A.D.2d 1048, 466 N.Y.S.2d 690; *also,* PJI 2:26).

*Dalal v. City of New York*, 262 A.D.2d 596, 597, 692 N.Y.S.2d 468, 469 (1999). In the present

case, there is no excuse or explanation for the Defendants' failure to report the misconduct and

abuse of Defendant Officer Tran.

123.    As a result of the foregoing, each Plaintiff was caused to sustain physical,

psychological and emotional injuries, pain and suffering, deprivation and violation of due

process and civil rights, caused to incur pecuniary losses, and were otherwise damaged.


## PUNITIVE DAMAGES

124.    Plaintiffs hereby incorporate by reference all previous paragraphs as though fully

set forth herein.

125.    The acts and omissions of Defendant, Officer Hieu Tran, in shooting at motorists

including Kishan Patel with his NYPD service pistol and causing the subject motor vehicle

accident, by driving recklessly and fleeing the scene of the accident, support a claim for punitive

damages in that said conduct was committed in a willful and/or reckless and wanton manner,

with a conscious indifference to the laws of the States of New York and New Jersey, the safety

of human bystanders who were driving on the road, the safety of Plaintiffs, Kishan Patel and

Stephanie Hummel, and were of such outrageous nature as to merit the award of punitive

damages to punish the Defendant, for said conduct and to deter said Defendant and others from

similar activities, for which claim is made.

126.    The acts and omissions of Defendants, City of New York, Mayor Eric Adams,

Commissioner Edward Caban, and Police Officers, John Doe 1-10, in causing the instant

incident by a deliberate indifference in hiring Defendant, Officer Hieu Tran, and subsequently

failing to adequately train, supervise, discipline, monitor and/or otherwise direct Officer Hieu

Tran, by failing to adequately create, adopt and/or enforce policies, procedures and practices within the NYPD to address a longstanding problem of alcohol and substance abuse by on-duty and off-duty police officers, including, Defendant, Officer Hieu Tran, and by failing to adequately create, adopt and/or enforce policies, procedures and practices within the NYPD to address the use and misuse of police issued service weapons by on-duty and off-duty police officers, including, Defendant, Officer Hieu Tran, support a claim for punitive damages in that said conduct was committed in a willful and/or reckless and wanton manner, with a conscious indifference to the laws of the State of New York, the safety of the community at large, the safety of Plaintiffs, Kishan Patel and Stephanie Hummel, and were of such outrageous nature as to merit the award of punitive damages to punish the Defendants, for said conduct and to deter said Defendants and others from similar activities, for which claim is made.

127.    The acts of the individual Defendants were willful, wanton, malicious and oppressive. These acts were without any justification and caused Plaintiffs severe and ongoing suffering. Such acts therefore warrant an award of punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment against Defendants as follows:

  a.  Compensatory damages in an amount to be determined at trial;

  b.  Punitive damages in an amount to be determined at trial;

  c.  An award of the costs and expenses of this action; and

  d.  Any such other and further relief as this Court may deem appropriate.

## JURY TRIAL IS DEMANDED

Respectfully submitted,

**HELD & HINES, LLP**

By:      *__/s/ Philip M.  Hines_____*
PHILIP M. HINES
4815 AVENUE N
BROOKLYN, NEW YORK 11234
P: (718) 531-9700
phines@heldhines.com
*Counsel for Plaintiff, Stephanie Hummel*


**SALTZ MONGELUZZI BENDESKY**

By:      *__/s/ J. Peter Veloski_____*
J. PETER VELOSKI (admitted *pro hac vice*)
1650 MARKET STREET, 52ND FLOOR
PHILADELPHIA, PA 19103
(215) 496-8282
Pveloski@smbb.com
*Counsel for Plaintiff, Stephanie Hummel*



**MARRONE LAW FIRM, LLC**

By:___/s/Joseph M. Marrone_____
Joseph M. Marrone, Esquire
200 South Broad, Ste. 610
Philadelphia, PA. 19102
(215) 732-6700 – Phone
(215) 732-7660 – Fax
jmarrone@marronelaw.com




Date:   May 6, 2025